IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

ENTERED
08/26/2016

|  |  |  |
|---|---|---|
| IN RE | ) |  |
|  | ) |  |
| BRADLEY CHRISTEN, | ) | CASE NO. 15-80260-G3-7 |
|  | ) |  |
| Debtor, | ) |  |
|  | ) |  |
| BAKER HUGHES OILFIELD | ) |  |
| OPERATIONS, INC.[1] | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
| v. | ) | ADV. NO. 15-8012 |
|  | ) |  |
| BRADLEY CHRISTEN, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

MEMORANDUM OPINION

The court has held a trial on the above captioned adversary proceeding.  The following are the Findings of Fact and Conclusions of Law of the court.  A separate Judgment will be entered denying the relief requested by the Plaintiff.  To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such.  To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

---

[1]Baker Hughes Oilfield Operations, Inc. brought the instant adversary proceeding on behalf of the bankruptcy estates of Great Gulfcan Energy Texas, Inc., Seiran Exploration and Production Company, LLC and Great Gulfcan HI98L, LLC (the "GG Entities"), pursuant to an order entered in the jointly-administered Chapter 7 case concerning the GG Entities.  (Docket No. 192, Case No. 11-40829-H4-7).

Findings of Fact

Bradley Christen ("Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on July 10, 2015. A discharge was entered in the Chapter 7 case on November 24, 2015.

Debtor is an attorney. He testified that he graduated from the Thurgood Marshall School of Law at Texas Southern University in May, 2007, and was admitted to the Texas bar in November, 2007.

Debtor testified that, after working in the office of a personal injury attorney for approximately one year, he formed a law firm with a law school classmate, Greg Rincon. Debtor testified that Rincon was involved in a business venture with Richard Sharp. Debtor testified that Sharp was the chief operating officer of the GG Entities.

Debtor testified that the law firm he formed with Rincon remained in operation for approximately nine months, from March through December, 2009. He testified that he met Sharp during this nine month period. He testified that, after December, 2009, he operated his own law firm.

Debtor testified that Sharp had an office in the space of the law firm he formed with Rincon.

Debtor testified, during December, 2010, he bumped into Sharp in a coffee shop. He testified that Sharp told Debtor that he might have some legal work that Debtor might be able to do.

2

On February 6, 2011, Debtor entered into an engagement agreement with Great Gulfcan Energy, Inc. (Plaintiff's Exhibit 6). Debtor testified that he received a $5,000 retainer under the engagement agreement. He testified that he was hired to prepare title opinions for the GG Entities, in connection with a proposed transaction.

Debtor testified that, in addition to the $5,000 retainer he received from the GG Entities, the total revenue for his law firm for 2011 was approximately $10,000.

Debtor prepared title opinions with respect to the Crystal Beach/Shipwreck System, ("Crystal") (Plaintiff's Exhibit 9); the State of Texas Oil and Gas Lease No. M-103037/M-103038 SW/4 of Tract 55-L (the "55-L Lease") (Plaintiff's Exhibit 10), and the State of Texas Oil and Gas Lease No. 70441 SE/4 Of Tract 98-L (the "98-L Lease") (Plaintiff's Exhibit 11).

Lowell Cage, the Chapter 7 Trustee of the GG Entities, testified that Great Gulfcan Energy, a Canadian entity formed for the purpose of acquiring the assets, acquired from Seiran Exploration & Production, ("Seiran") the assets described in the title opinions. He testified that the Canadian entity acquired the stock in Seiran and transferred it to a subsequently created Texas entity, Great Gulfcan Energy Texas. He testified that subsidiaries of Great Gulfcan Energy Texas held the 55-L Lease and the 98-L Lease. Debtor testified that Sharp was the owner of

3

Seiran.

Debtor testified that, prior to preparing the title opinions for the GG Entities, he had never prepared a title opinion, assisted in the preparation of a title opinion, or researched what was necessary to prepare a title opinion.  He testified that he made calls to other attorneys, but that the calls were never returned.  He testified that he located a model form of a title opinion on the internet.  Debtor testified that he accepted the work to prepare the title opinions, although he had no experience, because he thought he was smart enough to do the work or learn how to do the work, and he saw an opportunity presented to develop a good client.

Debtor testified that he discussed what information needed to be included in the title opinions with Sharp.  He testified that he did not discuss what information needed to be included in the title opinions with anyone associated with the GG Entities other than Sharp.

Debtor testified that he prepared the title opinions, which were dated February 9, 2011, signed them, and sent them to John DiGirolomo, who was then the CEO of Great Gulfcan Energy, Inc., Scott Paterson, who was then the Chairman of the Board of Great Gulfcan Energy, Inc., Sharp, and Bryan Campbell, an attorney.

Debtor's title opinion with respect to Crystal reflects that Debtor reviewed a copy of a Texas Special Warranty Deed conveying the property from Gateway Offshore Pipeline Company to Rincon; a copy of an assignment from Gateway Energy Corporation to Gateway Offshore Pipeline Company; an assignment, bill of sale, and conveyance from Sharp to Seiran; and indices and records of the County Clerk of Galveston County, Texas. (Plaintiff's Exhibit 9).

Debtor testified he reviewed the special warranty deed and Gateway assignments, which were located in Sharp's office. He testified that he reviewed the Galveston County property records online.

Debtor testified that he did not review the assignment from Sharp to Seiran.  He testified that Sharp had told him that he had a copy of the assignment, but did not provide the copy to Debtor.

Debtor's title opinion with respect to the 55-L Lease (which is comprised of two leases) reflects that Debtor reviewed copies of the leases; a supplemental title opinion dated July 1, 2004, prepared by Charles Sandel; indices and records of the County Clerk of Jefferson County, Texas; a joint operating agreement dated September 30, 1975; and and an assignment, bill of sale, and conveyance from Whiting Oil & Gas Corporation, LLC to Seiran.  (Plaintiff's Exhibit 10).

Debtor testified that he reviewed each of the documents, which were located in Sharp's office.

The July 1, 2004 title opinion prepared by Charles Sandel indicated that the leases were dated April 15, 2003, and had an initial term of five years.  (Plaintiff's Exhibit 14).

Cage testified that the 55-L Lease expired in March, 2011, approximately one month after Debtor prepared the title opinion.

The pending expiration of the 55-L Lease  was not identified in Debtor's title opinion.

Debtor's title opinion with respect to the 98-L Lease (which is comprised of two leases) reflects that Debtor reviewed copies of the leases; a drilling title opinion dated June 10, 1997, prepared by William E. Black; indices and records of the County Clerk of Galveston County, Texas, and an assignment, bill of sale, and conveyance from The Meridian Resource & Exploration, LLC and Energy Partners, Ltd. to Seiran.  (Plaintiff's Exhibit 11).

Debtor testified that he reviewed each of the documents in Sharp's office.  He testified that he reviewed the Galveston County property records online.

Debtor testified that, at the time he prepared the title opinions, he took instructions from Sharp.  He testified that he believed Sharp was instructing him on behalf of the GG

6

Entities.

Debtor testified that the title opinions are inaccurate.  He testified that they reflect that Seiran was the 100 percent working interest owner of the various assets.  He testified that there were overriding royalty interests and net revenue interests that were not owned by Seiran that were not reflected in the title opinions.

Debtor testified that, during the weekend after he prepared the title opinions, Sharp contacted him and requested that he become the corporate counsel for the GG Entities.[2]  He testified that there had been no previous discussion of Debtor's becoming corporate counsel.  He testified that he believed at the time he was hired as corporate counsel that he was hired because he and Sharp worked well together.  Debtor testified he now believes Sharp wanted Debtor to serve as corporate counsel because Sharp believed he could manipulate Debtor.

Debtor testified that he served as corporate counsel for the GG Entities from February, 2011 through May 20, 2011.  He testified that he was terminated as corporate counsel after concerns were raised regarding the title opinions he had prepared.

---

[2]The court takes judicial notice that February 9, 2011, the date of the title opinions, occurred on a Wednesday.

7

Debtor testified that he had no agreement to serve as corporate counsel prior to preparing the title opinions.  He testified that he has not conspired with Sharp to defraud the GG Entities or bring profit to Sharp.

Debtor testified that, after he was terminated by the GG Entities, he continued to perform legal services for Sharp. He testified that, at Sharp's request, he prepared certificates of incorporation for two additional entities.  He testified that he believes those entities were created in order to try to acquire from the GG Entities the interests described in Debtor's title opinions provided to the GG Entities.

The court finds the testimony of Debtor and of Cage to be credible.

In the complaint in the instant adversary proceeding, Plaintiff asserts that the GG Entities' claim[3] against Debtor should be excepted from discharge, under theories of fraud while acting in a fiduciary capacity, and willful and malicious injury.

---

[3]Cage has filed a proof of claim in the instant Chapter 7 case, in the amount of $8.42 million.  Cage attached to the proof of claim a copy of an original petition he filed against Debtor on December 27, 2013 in the 412th Judicial District Court of Brazoria County, Texas.

## Conclusions of Law

Section 523(a) of the Bankruptcy Code provides in pertinent part:

> a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> * * *
>
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
>
> * * *
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a).

Exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start. In re Hudson, 107 F.3d 355 (5th Cir. 1997). The creditor must prove by a preponderance of the evidence that the debt is nondischargeable. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Under Section 523(a)(4) of the Bankruptcy Code, the term "fiduciary" is narrower than the concept of a fiduciary under the common law; it is "limited to instances involving express or technical trusts." Matter of Tran, 151 F.3d 339 (5th Cir. 1998). The term "fiduciary capacity" as used in Section

523(a)(4) of the Bankruptcy Code is limited to only those
situations involving an express or technical trust relationship
arising from placement of a specific res in the hands of the
debtor.  See In re Garver, 116 F.3d 176 (6th Cir. 1997).

        In the instant case, there was no specific res in
Debtor's hands.  Debtor was engaged to provide a legal opinion,
and his opinion was erroneous.  Debtor was not an employee of the
GG Entities, and his then-future employment as corporate counsel
was not contemplated when he presented the erroneous title
opinions.  The court concludes that Debtor was not a fiduciary
within the meaning of Section 523(a)(4) of the Bankruptcy Code.

        Moreover, even if Debtor was a fiduciary within the
meaning of Section 523(a)(4) of the Bankruptcy Code, Debtor did
not commit fraud while acting in a fiduciary capacity.  The
exception to discharge for fraud while acting in a fiduciary
capacity is intended to reach those debts incurred through abuses
of fiduciary positions and through active misconduct whereby a
debtor has deprived others of their property by criminal acts;
both classes of conduct involve debts arising from the debtor's
acquisition or use of property that is not the debtor's.  In re
Miller, 156 F.3d 598 (5th Cir. 1998).  A finding of fraud
requires finding that the debtor acted in bad faith, knew of the
falsity and intended to deceive his creditor.  See In re Berry,
174 B.R. 449 (Bankr. N.D. Tex. 1994). There is insufficient

10

evidence for the court to conclude that Debtor was working in concert with Sharp, or derived any benefit from his provision of the erroneous title opinions, aside from the $5,000 he was paid. The court does not infer fraudulent intent from Debtor's actions. The court concludes that Plaintiff has not met its burden of proof as to Debtor's intent to defraud.  The court concludes that Plaintiff has not met its burden of proof as to an exception to discharge under Section 523(a)(4) of the Bankruptcy Code.

For a debt to be nondischargeable under Section 523(a)(6) of the Bankruptcy Code, a debtor must have acted with objective substantial certainty or subjective motive to inflict injury." In re Williams, 337 F.3d 504 (5th Cir. 2003), citing Miller v. J.D. Abrams Inc. (In re Miller), 156 F.3d 598 (5th Cir. 1998).

In the instant case, Debtor's failure to review the documents necessary to prepare title opinions does not rise to the level of an creating an objective substantial certainty of injury.  There is no evidence of Debtor's subjective motive to injure the GG Entities.  Debtor's actions were reckless, and represented legal malpractice by Debtor, and the GG Entities suffered great expense as a result.  However, recklessly inflicted injuries are not excepted from discharge under Section 523(a)(6) of the Bankruptcy Code.  Kawaauhau v. Geiger, 523 U.S. 57, 118 S. Ct. 974, 140 L.Ed.2d 90 (1998).  The court concludes

11

that Debtor's debt to the GG Entities is not excepted from discharge under Section 523(a)(6) of the Bankruptcy Code.

Based on the foregoing, a separate Judgment will be entered denying the relief requested by the Plaintiff.

Signed at Houston, Texas on August 26, 2016.


_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE